IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COOK INCORPORATED,<br><br>    Plaintiff,<br><br>  v.<br><br>MEDTRONIC, INC., and MEDTRONIC VASCULAR, INC.,<br><br>    Defendants.<br>_____/ | No. C 06-00333 JSW<br><br>**NOTICE OF TENTATIVE RULING AND QUESTIONS FOR HEARING** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING **TENTATIVE** RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON JUNE 2, 2006, AT 9:00 A.M.:

The Court has reviewed the parties' memoranda of points and authorities and, thus, does not wish to hear the parties reargue matters addressed in those pleadings. If the parties intend to rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing. If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing. *Cf.* N.D. Civil Local Rule 7-3(d). The parties will be given the opportunity at oral argument to explain their reliance on such authority.

The parties each shall have twenty-five (25) minutes to address the following questions:

**Motion to Dismiss Pursuant to Rule 12(b)(1)**

The Court **tentatively DENIES** Medtronic's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

1. The Court's understanding of the relief Cook seeks by way of declaratory relief is as follows: (1) an interpretation of paragraphs 4.1.2 and 4.8 of the Settlement Agreement; (2) a declaration that Medtronic's warranties regarding ownership were untrue because Fogarty may not have been the first to invent; (3) a declaration that Medtronic's representations that it listed all of the patents that it owned within the field of use were untrue because it did not list the White/Yu patents; and (4) a declaration that because of these alleged misrepresentations, Medtronic is required to indemnify and/or defend Cook because it did not keep the patent rights Medtronic licensed to Cook free from encumbrances. Is this understanding of Cook's position correct?

    a. If the Court is correct in its understanding, why would the Court not have jurisdiction to consider and resolve at least the first and third issues, which would not require any determination of who was the first to invent the subject matter of the patents and/or patent applications?

    b. As to Medtronic's contention that this Court has no jurisdiction to conduct an interference, Cook's Complaint and Exhibit B to the Takenouchi declaration refer to patents that claim priority to the Fogarty application. As such, what is the impact of the issuance of patents on Medtronic's argument that what Cook seeks is an interference, rather than an intefering patent suit? *See, Albert v. Kevex Corp.*, 729 F.2d 757, 758 n.1 (Fed. Cir. 1984).

    c. Does Cook concede that with respect to the second issue set forth in the preamble to this question, it asks the Court to make a declaration as to who has priority of invention with respect to the subject matter of the patents and/or patent applications? To resolve the "first to invent"

question, would Cook concede that the Court would have to determine that issued patents are, in fact, interfering patents? If so, as to issued patents why is Cook not, in effect, asking the Court to conduct an interference action, albeit one over which it would have jurisdiction?

2. At page 5 of its Opposition to Medtronic's motion to dismiss, Cook contends that the issue in this case is "when and where White/Yu first invented the modular, bifurcated, stent-graft device, and whether it occurred before Fogarty's alleged invention of the same device. The main difference between the two actions is that, instead of just looking at White/Yu's inventive activities, as was done in the L.A. Biomed action, here the inventive activities of both White/Yu and Fogarty need to be considered." It is the Court's understanding that Cook intends to raise that question as a defense to the *Edwards* litigation.

    a. Is the Court's understanding correct?

    b. Would Cook concede that to resolve what it claims to be a dispute over ownership is, in fact, a request that the Court determine inventorship?

    c. Would Cook concede that if the question of inventorship is resolved in its favor in the *Edwards* litigation, than this action becomes moot? If so, why is this action not premature?

3. What language in the Settlement Agreement supports Cook's position that it is entitled to be indemnified for costs "incurred in securing and maintaining a license from L.A. Biomed under the '485 and '073 patents, including all litigation support amounts paid by Cook to, or on behalf of L.A. Biomed?" (*See* Complaint ¶ 124; Opp. at 14.)

4. In light of the fact that the Complaint contends Cook is entitled to be indemnified for amounts it incurred to obtain a license from L.A. Biomed, if the Court accepts the allegations in the Complaint with respect to Medtronic's potential liability as

3

   true, what is Medtronic's best argument that the amount in controversy requirement is not satisfied?

**Motion to Dismiss Pursuant to Rule 12(b)(6)**

  The Court reserves issuing a tentative ruling on the motion to dismiss for failure to state a claim, but **tentatively DENIES** Medtronic's requests for a more definite statement and to strike portions of Cook's Complaint.

1.  a. Does Cook contend that any of the provisions of the Settlement Agreement are ambiguous?

  b. If so, which provisions and what is the specific interpretation that it proposes?

  c. Will Cook rely on any extrinsic evidence to show that the purported ambiguities or alternative interpretations exist? If so, what is that evidence?

  d. Does Medtronic agree that, to determine whether an ambiguity exists, the Court can provisionally receive any extrinsic evidence Cook may wish to offer? *See Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1350-51 (2004). If so, how can this matter be resolved by way of a motion to dismiss?

2.  Is Cook asking the Court to interpret the first sentence of paragraph 4.8 as follows: "Medtronic (on its own behalf and on behalf of each of its Affiliates) hereby represents and warrants to Cook that, as of the Effective Date, the Licensed Medtronic Patents constitute all of the patents and patent applications <u>owned by Medtronic</u> within the Field of Use <u>including those</u> acquired by Medtronic or its Affiliates as a result of Medtronic, Inc.'s acquisition of AneuRx, Inc. And World Medical Manufacturing Corp.?"

  a. If not, what is Cook's proposed interpretation of this sentence?

      b.    Given the plain language of the Settlement Agreement as to the definition of "Licensed Medtronic Patents," what is Cook's best argument that the White/Yu patents fall within that definition?

3.    a.    If the Court rejects Cook's interpretation of paragraph 4.8, does that render its claims with respect to paragraph 4.1.2 moot? If not, why?

      b.    The Settlement Agreement provides that Medtronic warranted and represented that "it owns all right and title to the patents licensed by it hereunder," not that Medtronic "owns all right and title to the *subject matter claimed by* the patents licensed by it hereunder." Is Cook's position that this is a distinction without a difference? If not, given this language, what is Cook's best argument that its "first to invent" position can be reconciled with paragraph 4.3?

      c.    Does Cook have any authority construing similar "all right and title" language to mean that such a representation equates to a representation regarding first to invent?

      d.    Can Cook represent to the Court that it was unaware of the White and Yu patents at the time it entered into the Settlement Agreement? If not, why should the Court not assume that those patents were not intended to be included in the Settlement Agreement?

4.    Cook appears to argue that many of the alleged representations and warranties are implied, *e.g.,* the exemption relating to a loss in the interference regarding the Fogarty's '836 application implies that other similar losses would constitute a breach. How can Cook square such arguments with paragraph 4.4.2?

5.    In reply Medtronic argues that, with respect to the interference proceeding referenced in paragraph 4.1.2, "[t]he ultimate inquiry for the PTO in the course of that proceeding was who among different individuals was entitled to a patent for a particular subject matter." (Reply at 7.) Was that proceeding based on a priority dispute? If so, the Court does not appreciate the import of footnote 4, in

5

which Medtronic attempts to distinguish the *Novo Nordisk* case on the ground that it "relates to entitlement to a patent when there is a priority dispute, and not a dispute over the title to an issued patent."

7. Section 15.1 makes reference to a "Parent Guaranty." Is that document in the record? If not, does it contain representations that impact either party's arguments?

Dated: June 1, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE