**United States District Court**

For the Northern District of California

1

2

3

4

5                                  **NOT FOR CITATION**

6                        IN THE UNITED STATES DISTRICT COURT

7

8                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   COOK INCORPORATED,

10          Plaintiff,                              No. C 06-00333 JSW

11   v.                                             **ORDER DENYING MOTION TO**
                                                    **DISMISS FOR LACK OF**
12   MEDTRONIC, INC., and MEDTRONIC                 **SUBJECT MATTER**
     VASCULAR, INC.                                 **JURISDICTION AND GRANTING**
13                                                  **MOTION TO DISMISS FOR**
            Defendants.                             **FAILURE TO STATE A CLAIM**
14

15   _____/

16

17                                  **INTRODUCTION**

18          This matter comes before the Court upon consideration of the motions to dismiss

19   pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants

20   Medtronic, Inc. and Medtronic Vascular, Inc. (collectively "Medtronic").  Having considered the

21   parties' pleadings, relevant legal authority, and having had the benefit of oral argument, the

22   Court DENIES Medtronic's motion to dismiss for lack of subject matter jurisdiction but

23   GRANTS Medtronic's motion to dismiss for failure to state a claim, without leave to amend.[1]

24                                  **BACKGROUND**

25          This is the latest in a series of cases pending before this Court arising out of disputes

26   relating to various patents directed to medical devices used in the repair of abdominal aortic

27   aneurysms ("AAA"), and in particular endovascular grafts.  *See Edwards Lifesciences LLC, et*

28

_____

[1]       Medtronic also moves to strike portions of the complaint and, in the
alternative, seeks a more definite statement from Cook Incorporated ("Cook") as to the basis
of its allegations against Medtronic.  Those requests are DENIED AS MOOT.

*al. v. Medtronic, Inc., et al.,* Case No. 03-3817-JSW (the "*Edwards* litigation") and *Medtronic, Inc. v. White*, Case No. 04-2201-JSW (the *"White* litigation").[2]

This declaratory relief action stems from the execution of a Settlement Agreement by Cook and Medtronic with an effective date of July 22, 2003 (the "Settlement Agreement"). (Compl., ¶ 51; Settlement Agreement at 1.)[3]  Pursuant to the Settlement Agreement, the parties resolved two lawsuits that Cook had initiated against Medtronic, Inc., Medtronic AVE, Inc., and World Medical Manufacturing Corp.  (Settlement Agreement at 1.)  As part of that agreement, Medtronic licensed to Cook rights that it held in certain patents and patent applications, including patents and applications that Cook denominates as "the Fogarty patent applications and patents."  (Compl., ¶ 5; Settlement Agreement, ¶¶ 1.J, 1.U, 2.1, and Ex. B.)

The Settlement Agreement sets forth certain warranties, representations and obligations. The following paragraphs of the Settlement Agreement form the basis of Cook's allegations in this case:

> Medtronic hereby represents and warrants to Cook that ... it owns all right and title to the patents licensed by it hereunder to the Party licensee; and Party licensor's and its Affiliates' right, title, and interest in and to the patent [sic] licensed by it hereunder is and during the term of this Agreement shall continue to be free of any material lien, charge, security interest or encumbrance which would adversely affect or limit the Party licensee's and its Affiliates' exercise of its rights hereunder[.]  (Settlement Agreement, ¶¶ 4.1, 4.1.2.);

> Medtronic ... hereby represents and warrants to Cook that, as of the Effective Date, the Licensed Medtronic Patents[4] constitute all of the patents and patent applications within the

---

United States District Court

For the Northern District of California

[2]     Paragraphs 33-47 of Cook's Complaint provide an exposition of the various medical manufacturers and inventive entities involved in the development of this technology.

[3]     The Settlement Agreement is attached to the Complaint as Exhibit A.

[4]     "Licensed Medtronic Patents" is defined in the Settlement Agreement as "the patents and patent applications listed in Exhibit B attached [to the Settlement Agreement] and any related patents identified in paragraph U below."  (Settlement Agreement, ¶ 1.J.) Paragraph 1.U, in turn, states that the terms "patents" and "applications" licensed or referred to in the Settlement Agreement include "all world wide applications and patents claiming priority from the identified applications and patents" and "all worldwide applications and patents from which the identified patent and applications claim priority."  (*Id.*, ¶ 1.U.)

United States District Court

For the Northern District of California

> Field of Use[5] acquired by Medtronic or its Affiliates as a result of Medtronic, Inc.'s acquisition of AneuRx, Inc. and World Medical Manufacturing Corp. (Settlement Agreement, ¶ 4.8.);
>
> From and after the Effective Date, Medtronic shall indemnify, defend and hold harmless Cook and its Affiliates and their respective successors and permitted assigns from and against all claims, actions, suits liabilities, damages, losses and reasonable expenses (collectively, "Losses") ... in each case arising out of or in connection with (a) any breach by the Indemnifying Party or its Affiliates of any representation or warranty set forth in this Agreement, [or] (b) any breach by the Indemnifying Party or its Affiliates of any agreement, covenant or obligation set forth in this Agreement ... . (Settlement Agreement, ¶ 5.1.)

On August 15, 2003, Edwards Lifesciences, LLC, and Endogad Research PTY, Ltd. (collectively "Edwards") instituted the *Edwards* litigation, alleging that Cook and Medtronic infringe U.S. Patents 6,582,458, and 6,613,073, both of which are entitled "Intraluminal Graft." The named inventors of the inventions disclosed in the '458 and '073 Patents are Drs. Geoffrey White and Weiyun Yu, and the Court shall refer to these patents hereafter as the "White/Yu Patents."  (*See* Compl., ¶¶ 79-80.)

During the course of the *Edwards* litigation, Medtronic raised the issue of whether Edwards was the owner of the White/Yu patents, which spawned the *White* litigation, a breach of contract action against Dr. White.  (*Id.*, ¶ 88.)  In November 2004, Los Angeles Biomedical Research Institute at Harbor-UCLA Medical Center ("L.A. Biomed") intervened in the *White* litigation because it too claimed an ownership interest in the White/Yu patents.  (*Id.*, ¶ 90.) Before L.A. Biomed intervened in the *White* litigation, L.A. Biomed, Cook, and Medtronic entered into a license agreement, in which L.A. Biomed licensed its purported patent rights in the White/Yu patents to both Medtronic and Cook.  (*Id.*, ¶ 91.)  L.A. Biomed, funded by Cook, proceeded to trial against Dr. White in the *White* litigation, and a jury returned a verdict against L.A. Biomed on March 29, 2006.  (*Id.*, ¶ 124.)

---

[5]        "Field of Use" is defined as "treating aortic or iliac injury or aneurism disease with endoluminal stent grafts, including treating thoracic aortic or abdominal aortic injury or anuerismal disease with endoluminal stent grafts."  (Settlement Agreement, ¶ 1.F.)

3

**United States District Court**

For the Northern District of California

1    Here, Cook alleges that paragraph 4.1.2 of the Settlement Agreement "should be

2  interpreted to mean that Medtronic was warranting and representing that Fogarty, not White/Yu, is

3  in fact the first inventive entity of the basic, core concept of a modular, bifurcated stent-graft."

4  (Compl., ¶ 111.)  Cook also alleges that paragraph 4.8 "should be interpreted to mean that all of

5  the patent applications and patents owned by Medtronic, whether equitably owned or legally

6  owned, with respect to modular, bifurcated stent-graft devices used for treating AAA were

7  included in the license grant to Cook, and not just those patent applications and patents that were

8  acquired by virtue of Medtronic's acquisition of AneuRx and World Medical." (*Id.*, ¶ 117.)  Cook

9  claims that because there is a dispute as to whether White/Yu or Fogarty was the first to invent

10  allegedly common subject matter, Medtronic breached these representations and warranties and

11  also failed to keep the Licensed Medtronic Patents free of encumbrances.  (*See id.*, ¶¶ 109-120.)

12    In addition, Medtronic settled both the *Edwards* litigation and the *White* litigation.  (*Id.*, ¶

13  100.)  Cook claims that, as a result of the settlement, Medtronic has "effectively admitted that it

14  does not own all the 'right, title, and interest,'" in and to the subject matter disclosed" in the

15  licensed patents and has given up its ability to perfect its ownership interests in the White/Yu

16  patents, thus effectively admitting that those patents are an encumbrance on Cook's rights.  (*Id.*,

17  ¶¶ 99-106.)

18    As a result of the alleged breaches, Cook contends Medtronic is "obligated to indemnify,

19  defend, and hold harmless Cook with respect to the San Francisco *Edwards* action, including any

20  related costs, attorneys' fees, settlement payment(s), any potential judgment against Cook ... and

21  any losses caused to Cook as a result of any injunction." (*Id.*, ¶ 124.)  Cook contends Medtronic

22  also is "obligated to indemnify, defend and hold Cook harmless with respect to all costs,

23  expenses, and license fees/royalties incurred in securing and maintaining a license from L.A.

24  Biomed under the '485 and '073 patents, including all litigation support amounts paid by Cook to,

25  or on behalf of, L.A. Biomed." (*Id.*, ¶ 124; *see generally id.* ¶¶ 121-127.)

26    Because Medtronic disputes Cook's interpretation of the Settlement Agreement and

27  disagrees with Cook's contentions as to Medtronic's obligations thereunder, Cook filed this

28  declaratory relief action.

4

**United States District Court**

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ANALYSIS**

**A.      Medtronic's Motion to Dismiss Under Rule 12(b)(1).**

A motion to dismiss for lack of subject matter jurisdiction may be "facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004.) "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* Medtronic's attack on Cook's complaint is a facial attack and, in such a case, a court presumes the plaintiff's allegations to be true and resolves all inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Medtronic contends that Cook is asking this Court to conduct an interference, which would fall within the exclusive province of the United States Patent and Trademark Office, because Cook alleges that there is a dispute over who is the first to invent what Cook contends is common subject matter with respect to the "Fogarty application" and the issued White/Yu patents. *See* 35 U.S.C. § 135.

Medtronic's argument in this respect is contradicted by the face of the Complaint, which refers both to patent applications and to issued patents.  More importantly, however, Cook's allegations demonstrate that it is asking this Court to interpret the Settlement Agreement in a particular fashion and to determine whether or not Medtronic breached that agreement.  The Court undoubtedly has jurisdiction over the former request.  To the extent Medtronic argues that by the latter, Cook is asking for an interference or an interference action, the Court disagrees.  Rather, Cook, in essence, asks the Court to conduct an inquiry similar to that which this Court may be required to do in the *Edwards* litigation, where Cook intends to defend against infringement on the ground that the White/Yu patents are invalid for lack of priority.

Medtronic also argues that Cook fails to satisfy the amount in controversy requirement to show diversity jurisdiction exists.  Cook alleges that it has incurred legal fees in connection with both the *White* and *Edwards* litigation, has paid a license fee to L.A. Biomed and that these expenses exceed the amount in controversy.  (Compl., ¶¶ 9, 108, 124).  That license agreement is a matter of record in the *White* litigation, and the fee paid by Cook to L.A. Biomed exceeds the jurisdictional amount.  The Court concludes that these allegations are sufficient to satisfy the

1    amount in controversy requirement. *See, e.g., Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398,

2    405 n.1 (9th Cir. 1996) (noting that court may look to potential loss to defendant to determine

3    amount in controversy).

4           Accordingly, the Court finds that it has jurisdiction over this matter and shall proceed to

5    address Medtronic's motion to dismiss for failure to state a claim.

6    **B.      Medtronic's Motion to Dismiss Under Rule 12(b)(6).**

7           Cook asks this Court for a declaration that its interpretation of the Settlement Agreement

8    is correct and that, under its interpretation, Medtronic breached the representations and warranties

9    set forth in Paragraphs 4.1.2 and 4.8. (*See* Compl., Prayer for Relief.)  A motion to dismiss is

10   proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be

11   granted. Fed. R. Civ. P. 12(b)(6).  A motion to dismiss should not be granted unless it appears

12   beyond a doubt that a plaintiff can show no set of facts supporting his or her claim. *Conley v.*

13   *Gibson*, 355 U.S. 41, 45-46 (1957); *see also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.

14   1978).  In ruling on a Rule 12(b)(6) motion, the complaint is construed in the light most favorable

15   to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders*

16   *v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  The court, however, is not required to accept legal

17   conclusions cast in the form of factual allegations if those conclusions cannot reasonably be

18   drawn from the facts alleged. *Cleggy v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.

19   1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

20          As a general rule, "a district court may not consider any material beyond the pleadings in

21   ruling on a Rule 12(b)(6) motion." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled*

22   *on other grounds, Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)

23   (citation omitted).  However, in this case, the Settlement Agreement is attached to the Complaint

24   and, thus, the Court may consider it without converting the motion to dismiss into a motion for

25   summary judgment. *Hal Roach Studios, Inc. v. Richmond & Feiner Co., Inc.*, 806 F.2d 1542,

26   1555 n.19 (9th Cir. 1989).  To the extent resolution of this motion calls for interpretation of the

27   Settlement Agreement, the Court may dismiss the Complaint only if Cook "can show no set of

28   facts supporting" its claim that the interpretation of the Settlement Agreement is correct. *Conley*,

**United States District Court**

For the Northern District of California

United States District Court

For the Northern District of California

355 U.S. at 45-46; *see also International Ins. Co. v. Red & White Co.*, 1994 WL 706361 at *10-12 (N.D. Cal. Dec. 14, 1994) (granting motion to dismiss breach of contract counterclaim where contract was not reasonably susceptible to meaning urged by non-moving party).

As in any contract case, interpretation of the Settlement Agreement is governed by the mutual intent of the parties at the time it was formed. *See AIU Insurance Co. v. Superior Court*, 51 Cal. 3d 807, 821 (1990) (citing Cal. Civ. Code § 1636) (applying general principles of contract interpretation to insurance policy). The Court infers the parties' intent from the language of the Settlement Agreement and focuses "on the usual and ordinary meaning of the language and the circumstances under which the agreement was made." *Powers v. Dickson, Carlson & Campillo*, 54 Cal. App. 4th 1101, 1111 (1997); *see also* Cal. Civ. Code §§ 1638, 1639, 1644. Interpretation of the Settlement Agreement is "solely a judicial function unless the determination turns upon the credibility of extrinsic evidence." *Powers*, 54 Cal. App. 4th at 1111. The question of whether a particular term is ambiguous is a question of law. *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (2004).

If the Settlement Agreement is not ambiguous, the Court cannot consider parol evidence to demonstrate the parties' intent. *Powers*, 54 Cal. App. 4th at 1111. However, the Court may consider parol evidence to determine if a particular term in the Settlement Agreement is reasonably susceptible of the meaning urged by any party. *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992); *accord Powers*, 54 Cal. App. 4th at 1111.[6]

### 1.   Paragraph 4.1.2 Is Not Reasonably Susceptible to Cook's Proposed Interpretation.

Cook contends that the phrase regarding ownership of "all right and title to the patents licensed by it" under the Settlement Agreement should be interpreted to mean that Medtronic represented that it (through Fogarty), rather than White and Yu, was the first to invent "the basic

---

[6]   In response to the Court's questions, Cook stated at oral argument on this motion that, apart from the background facts set forth in the Complaint, it did not intend to rely on extrinsic evidence in support of its interpretation of the Settlement Agreement. Moreover, the Settlement Agreement contains an integration clause at paragraph 15.1, which would preclude consideration of extrinsic evidence to alter or vary its terms. *See Masterson v. Sine*, 68 Cal. 2d 222, 225 (1968).

core concept of a modular bifurcated stent-graft." (Compl., ¶ 111). Cook does not offer any legal authority interpreting "all right and title" language in this manner. Instead, Cook argues that the term is reasonably susceptible to this meaning because, while inventorship and ownership are distinct issues, a "patent right initially vests in the inventor." *See Beech Aircraft Corp. v. Edo Corp.*, 980 F.2d 1237, 1248 (Fed. Cir. 1993). From this premise, Cook argues that, because there can be only one "true" inventor of a particular invention, a representation of ownership in a particular patent necessarily includes a representation as to first inventorship.

There are several flaws with Cook's arguments on the meaning of "all right and title" and Medtronic's alleged breach of this paragraph. First, Cook's theory is premised on the allegation that Medtronic represented that it was the first inventive entity of the "basic core concept of a modular bifurcated stent-graft," and that Medtronic owned the "dominant patent" in the field, such that any later invention could not be practiced without practicing this patent. (*See, e.g.*, Compl., ¶¶ 59-64.) However, the plain language of Paragraph 4.1.2 refers neither to a "dominant patent" nor to a field of technology. Rather, it refers to "patents and patent applications," each of which presumably embody a novel, non-obvious invention or an improvement on an invention. *See* 35 U.S.C. §§ 101-103.

Second, Cook expressly alleges that, at the time it entered into the Settlement Agreement, entities *other than Medtronic* contended that *they* were the first to invent the basic core concept of a modular bifurcated stent-graft. (*See, e.g.,* Compl., ¶¶ 35-47.) Cook does not allege that it was unaware of these competing claims. The Court cannot reasonably infer a lack of knowledge from the facts set forth in the Complaint because Cook alleges that it is one of the "four primary entities involved in the United States market for modular, bifurcated stent-grafts used in the treatment of AAA." Cook also alleges that its own patented product, the Zenith® AAA Endovascular graft, was developed in the same time frame as Medtronic, and others, were developing their own modular, bifurcated stent-grafts. (Compl., ¶¶ 36-37, 41-42.)[7]

_____

[7]    Cook also licensed certain patents to Medtronic, which disclose modular, bifurcated stent grafts. (Compl., ¶ 41; Settlement Agreement ¶¶ 1.G, 1.U., 2.1, 4.1, 4.1.2.) Under Cook's theory, Cook represented that *it* was the first to invent a modular, bifurcated stent-graft because Cook represented and warranted to Medtronic that it owned "all right and

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    Third, to the extent Paragraph 4.1.2 covers issued patents, even under Cook's

2    interpretation, if another inventor was deemed to be the first to invent a "modular bifurcated stent-

3    graft," that fact would not affect Medtronic's ownership in an issued patent.  Rather, an adverse

4    priority determination would render a particular patent invalid.  Thus, Medtronic would still own

5    the patent; the patent would simply have no value.  Thus, those facts would not support a finding

6    that Medtronic breached the Settlement Agreement.

7    Fourth, the parties agreed that nothing in the Settlement Agreement was to be construed as

8    a warranty or representation that "any manufacture, use, offer for sale, sale, importation or other

9    disposition of any product will be free from infringement *of any patent other than the patents*

10   *licensed herein*."  (Settlement Agreement, ¶ 4.4 (emphasis added).)   It is difficult to see how the

11   White/Yu patents are an "encumbrance" to Cook's rights, when the Settlement Agreement

12   explicitly contemplates that the parties made no representations or warranties that the products

13   covered by the Settlement Agreement would be free from infringement litigation initiated by third

14   parties.  Indeed, this same paragraph also provides that Medtronic would not be required to

15   "defend, indemnify or hold harmless" Cook from an infringement suit by a third party.  In

16   contravention of that provision, Cook asks this Court to declare that Medtronic must defend and

17   indemnify it for expenses it has incurred because of the *Edwards* infringement litigation.

18   Cook contends its interpretation also is supported by the final sentence of Paragraph 4.1.2,

19   which provides that "it shall not be a breach of any representation and warranty hereunder by

20   Medtronic if Medtronic or its Affiliates do not prevail in the interference proceeding relating to

21   U.S. patent application 08/463,836."  (Settlement Agreement, ¶ 4.1.2.)  Specifically, Cook argues

22   that by expressly exempting this interference proceeding, "Medtronic necessarily acknowledged

23   that any other similar loss [of priority] unnamed in 4.1.2 would constitute a breach," and thus

24   implicitly warranted it was the first to invent the technology in question.  (Opp. Br. at 8.)  The

25   Court does not find Cook's arguments persuasive because, as previously noted, the Settlement

26   Agreement covers the specific patents and patent applications listed in Exhibit B, rather than "the

27   basic core concept of a modular bifurcated-stent graft."

28

title" to those patents.

**United States District Court**

**For the Northern District of California**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.   Paragraph 4.8 Is Not Reasonably Susceptible to Cook's Proposed Interpretation.

Cook also seeks a declaration that Medtronic breached paragraph 4.8 by omitting the White/Yu patents from the license agreement.  (Compl., ¶ 117.)  Paragraph 4.8 of the Settlement Agreement states that "Medtronic ... hereby represents and warrants to Cook that, as of the Effective Date, the Licensed Medtronic Patents constitute all of the patents and patent applications within the Field of Use acquired by Medtronic or its Affiliates as a result of Medtronic, Inc.'s acquisition of AneuRx, Inc. and World Medical Manufacturing Corp."

Cook argues that this paragraph should be interpreted to mean that "all of the patent applications and patents owned by Medtronic, whether equitably owned or legally owned, with respect to modular, bifurcated stent-grafts used for treating AAA were included in the license grant to Cook."  (Compl., ¶ 117.)  Cook argues that this interpretation is supported by the fact that Exhibit B contains a patent application filed after Medtronic acquired AneuRx and World Medical, a fact Medtronic acknowledges.  (Opp Br. at 12; Settlement Agreement, Ex. B, Item 121; *see also* Reply at 11.)

The Court must consider the disputed language in the context of the Settlement Agreement as a whole.  Paragraph 4.8 does not address what Medtronic licensed to Cook.  Indeed, the license granted to Cook is set forth in Paragraph 2.2, and that paragraph provides that "Medtronic, ... hereby grants to Cook and its Affiliates a royalty-bearing, world-wide, non-exclusive license ... under the Licensed Medtronic Patents."  As noted, "Licensed Medtronic Patents" means "the patents and patent applications listed in Exhibit B attached hereto and any related patents identified in paragraph U below."  Thus, even though Exhibit B may include patents other than those acquired from AneuRx or World Medical, there is no language in Paragraph 2.2 that suggests Medtronic granted a license to Cook that included anything more than those specific patents and patent applications listed on Exhibit B, as expressly supplemented by paragraph 1.U of the Settlement Agreement.  Nor is there any language in Paragraph 4.8 that supports Cook's contention that Medtronic made representations and warranties as to its entire patent portfolio within the specified Field of Use.  Indeed, to interpret paragraph 4.8 in the manner proposed by Cook would render the language regarding the acquisition of AneuRx and World Medical

**United States District Court**

For the Northern District of California

1  superfluous.  This interpretation is not warranted.  *See* Cal. Civ. Code § 1641 (contract must be

2  interpreted to give effect to every part.)  Thus, the Court concludes that Paragraph 4.8 is not

3  reasonably susceptible to the interpretation that Medtronic representation that Exhibit B included

4  each and every patent it owned in the Field of Use.

5     Cook's contentions regarding Medtronic's duty to defend and indemnify depend upon its

6  interpretation of Paragraphs 4.1.2 and 4.8.  Because the Court rejects Cook's interpretation of the

7  Settlement Agreement, there is no basis for the argument that Medtronic is required to defend,

8  indemnify and hold harmless Cook as a result of the alleged breaches.  Accordingly, the Court

9  concludes there are no facts that Cook could allege that support its interpretation of the Settlement

10  Agreement and an alleged breach of that agreement.

11  **CONCLUSION**

12     For the foregoing reasons, the Court DENIES Medtronic's motion to dismiss for lack of

13  subject matter jurisdiction, but GRANTS the motion to dismiss for failure to state a claim, without

14  leave to amend.  This case is dismissed with prejudice, and the Clerk is directed to close the file.

15     **IT IS SO ORDERED.**

16

17  Dated: June 29, 2006

18  JEFFREY S. WHITE
   UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28